## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MICHAEL VAN BAALEN,

      Plaintiff,

v.                                                          No. 1:23-cv-00416-DHU-SCY

MUTUAL OF OMAHA INSURANCE
COMPANY, ANDREW TODD SHADER,
JOSHUA HANLEY, AFFORDABLE
INSURANCE GROUP INC. and
JANE DOES 1-5,

      Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

      This matter is before the Court on Mutual of Omaha Insurance Company's ("Mutual of Omaha") Motion to Dismiss. Doc. 4. Michael Van Baalen ("Plaintiff") filed his response in opposition, to which Mutual of Omaha filed its reply. Docs. 5, 7. The Court, having carefully considered the motion, briefs, arguments, and being fully advised of the premises, concludes that the motion will be GRANTED in part and DENIED in part.

### I. BACKGROUND

      This matter arises from robocalls to sell insurance. Plaintiff brings this action in accordance with the anti-harassment provisions of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and analogous provisions of the New Mexico Unfair Practices Act ("UPA"), N.M.S.A. § 57–12–22 *et seq*. During the events in question, Plaintiff had registered his cellular telephone number with the National Do Not Call ("DNC") Registry, and he did not consent to the calls or have a business relationship with the Defendants.[1] Doc. 1-2 at¶¶ 59, 60, 64. Despite this,

---

[1] "The national do-not-call registry is a list containing the personal telephone numbers of telephone subscribers who have voluntarily indicated that they do not wish to receive unsolicited

Defendants or their agents "regularly, automatically, repeatedly telephoned the phones of New Mexicans … for the purpose of advertising products and services." *Id*. ¶ 6. Plaintiff claims that he received multiple calls from Defendants soliciting Medicare supplemental insurance. *Id*. ¶ 39.

Defendant Todd Shader ("Shader") is the shareholder, officer, and director of Defendant Affordable Insurance Group, Inc. ("AIG"). *Id*. ¶¶ 9-10, 14. Shader uses AIG to operate telemarketing call centers. *Id*. ¶ 15. Defendant Joshua Hanley ("Hanley") is an insurance agent employed by AIG. *Id*. ¶ 16. Shader "uses … Hanley to accept call-transfers from other call-centers that Shader controls." *Id*. Defendants Jane Does 1-5 "are the persons who actually made or initiated the robocalls" in question. *Id*. ¶ 12.[2] Except for Mutual of Omaha, all other Defendants in this case "are among [a] group of companies and persons inter-related by common ownership and/or control … who were Shader's agents." *Id*. ¶ 13.

Mutual of Omaha contracted with Shrader and AIG for telemarketing services. *Id*. ¶ 22. Shrader in turn contracted with the Jane Does to initiate the telemarketing at issue in this case. *Id*. ¶ 23. The Jane Does would initiate calls and read a script approved by Shrader. *Id*. ¶ 24. If a customer expressed interest in a product, then the customer would be transferred to AIG's call center so that Hanley or AIG could continue the sales pitch. *Id*.

On multiple occasions before filing this complaint, Plaintiff received calls for Medicare supplemental insurance from the "Jane Does" that were highly similar. When Plaintiff would answer, he heard a strange pause of silence or "dead air" before a live telemarketer came on the line. *Id*. ¶ 34. His phone's caller identification showed that the calls derived from the same source,

---

calls from commercial telemarketers." *Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228, 1234 (10th Cir. 2004).

[2] Plaintiff states that the Jane Does' "identities and whereabouts" have not yet been discovered. *Id*.

namely a "505-209-xxxx" format *Id.* ¶¶ 35, 37. When Plaintiff called back the numbers, he "always reached a call-center and telemarketer that commenced" the same standardized script that Shader approved. *Id.* ¶ 38. The Jane Doe callers "used fake names" to remain unidentifiable. *Id.* ¶ 43. Defendants "knew about and approved Jane Does' standardized telemarking sales pitch that used only a fake name." *Id.*

On February 23, 2023, Plaintiff decided to feign interest in one of Defendants' calls. *Id.* ¶ 45. After listening to a standard sales pitch and qualifying for the Medicare supplemental insurance, Plaintiff's call was transferred to AIG's in-house call center and directly to Hanley. *Id.* ¶ 47. Hanley told Plaintiff that he had been transferred to a "Medicap Enrollment Center." *Id.* ¶ 48. According to Defendant, "Medicap Enrollment Center" is a fake name used to conceal Defendant's identity or location. *Id.* Mutual of Omaha and Shrader "required the use of a fake name," like the "Medicap Enrollment Center." *Id.* ¶ 49.

After Plaintiff's call with Hanley ended, Mutual of Omaha sent Plaintiff an email. *Id.* ¶ 51. The email directed Plaintiff to sign the insurance application that Plaintiff applied for in the aforementioned call by either clicking on a different website (signyourmedsuppapp.com) or by providing a voice signature by calling a telephone number (1-866-379-9513). *Id.* ¶ 51; Ex. A. Mutual of Omaha "controlled, was assigned and was using or benefiting from the use of the phone number … and the website" and Mutual of Omaha "used this phone number and website to sell insurance in concert with Jane Does, Shader and AIG." *Id.* ¶ 52.

About a month after the February 23, 2023, telephone call, Plaintiff filed the current action. Plaintiff originally brought his case in the Second Judicial District Court in Bernalillo County, New Mexico. Mutual of Omaha timely filed a notice of removal in May 2023, invoking the Court's

federal-question jurisdiction. *See* Doc. 1. A few days later, Mutual of Omaha filed the motion to dismiss Plaintiff's entire complaint that is now before the Court.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each element." *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)) (internal quotation marks omitted). Finally, in reviewing a motion to dismiss, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Sylvia v. Wisler*, 875 F.3d 1307, 1313 (10th Cir. 2017).

## III. DISCUSSION

### A.   Mutual of Omaha's Motion to Dismiss Plaintiff's Claim under 47 U.S.C. § 227(b) (Count II) is Denied

The TCPA was enacted in 1991 because "[m]any consumers [were] outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The TCPA principally outlaws four practices. *Id*. Only two are relevant here. First, Plaintiff raises a TCPA claim against Defendants under 47 U.S.C. § 227(b)

("Section 227(b)"), which prohibits using auto-dialers and prerecorded messages to phones. Second, Plaintiff asserts a claim under 47 U.S.C. § 227(c) ("Section 227(c)") for Defendants' alleged violation of the Do-Not-Call Registry.

> Beginning with Plaintiff's Section 227(b) claim, that provision makes it unlawful to
>
> make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call....

47 U.S.C. § 227(b)(1)(A)(iii). "The TCPA provides a private cause of action to persons who receive calls made in violation of 47 U.S.C. § 227(b)." *Metzler v. Pure Energy USA LLC*, No. 21-CV-9798 (VEC), 2023 WL 1779631, at *5 (S.D.N.Y. Feb. 6, 2023) (quoting 47 U.S.C. § 227(b)(3)). To state a claim under the TCPA, a plaintiff must allege that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system [or an artificial or prerecorded voice]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

Summarizing the parties' arguments, Mutual of Omaha argues that Plaintiff's Section 227(b) claim fails because it did not directly make the calls, nor was it in a agency relationship with those who did, so it cannot be held liable for making the calls. Assuming, *arguendo*, that it did make the calls, Mutual of Omaha argues that Plaintiff has still failed to establish that it used an automatic telephone dialing system or an artificial or prerecorded device. Apart from its Section 227(b)-specific arguments, Mutual of Omaha argues that the entire complaint should be dismissed because Plaintiff engaged in "shotgun" pleading by "lump[ing] together, conflat[ing], and … not properly differentiat[ing] between" the various Defendants. Doc. 4 at 10. Plaintiff counters that Mutual of Omaha is vicariously liable for the calls, and that he has adequately alleged the

remaining elements of his Section 227(b) claim, such as use of an auto-dialer or prerecorded voice. In response to Mutual of Omaha's shotgun pleading argument, Plaintiff argues that he has sufficiently distinguished each Defendant's conduct based on the available factual information in and that further discovery could substantiate his claims.

As explained below, the Court concludes that Plaintiff has plausibly stated a TCPA vicarious-liability claim for relief under Section 227(b) because Plaintiff's allegations at this stage establish that Mutual of Omaha had the right to control the third-party callers. Because Plaintiff's allegations are sufficient to establish control, his allegations necessarily did not run afoul of "shotgun pleading" principles and the Court denies Mutual of Omaha's request to dismiss the complaint on that separate ground.

### 1. Plaintiff Plausibly Alleges that Mutual of Omaha Is Vicariously Liable for Calling Plaintiff's Telephone

As noted above, "[t]he first element of a TCPA claim is that 'the defendant called a cellular telephone number.'" *Escano v. Concord Auto Protect, Inc.*, No. 22-2096, 2023 WL 4247703, at *2 (10th Cir. June 29, 2023) (quoting *Meyer,* 707 F.3d at 1043). Defendants in TCPA actions may be held either directly or vicariously liable for making calls. *See Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014) ("There are two potential theories of liability: (1) direct liability; and (2) vicarious liability.") "Direct liability" is imposed "upon persons that 'make' a telephone call or text." *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (citation and internal quotation marks omitted). "Vicarious liability" attaches "where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014). In short, "[f]or a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call."

*Pascal v. Agentra, LLC*, No. 19-CV-02418-DMR, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (citation omitted).

Direct liability is inapplicable here. In its dismissal motion, Mutual of Omaha raised a directly liability argument. In response, Plaintiff makes no rebuttal arguments concerning direct liability. Instead, Plaintiff only addresses vicarious liability. The Court therefore focuses only on vicarious liability.

"[A] defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it." *Childress*, 2018 WL 4684209, at *3 (quoting *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018)) (quotation marks omitted); *Gomez v. Campbell-Ewald Co.*, 768 F.3d at 879 ("A defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship ... between the defendant and a third-party caller."). "Agency" is defined as "the fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Escano*, 2023 WL 4247703, at *3 (discussing agency in the context of a TCPA lawsuit).

A principal can be liable for an agent's TCPA violations based on "the bedrock theories of agency: actual authority, apparent authority [and] ratification[.]" *Jones*, 887 F.3d at 449. Here, Plaintiff argues that he can establish an agency relationship based on the theories of actual authority, apparent authority, and ratification.

### a. Actual Authority

An agent acts with "actual authority" when, "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Alfaro-Huitron v.*

*Cervantes Agribusiness*, 982 F.3d 1242, 1251 (10th Cir. 2020) (citation omitted). Therefore, "[a]ctual authority turns on the reasonable belief of the *agent* based on such acts and communications." *Id.* (emphasis in original). According to Plaintiff, Mutual of Omaha was the principal, and Shader, AIG, and Hanley were its agents. Plaintiff further states that the Jane Doe callers were subagents.

In the TPCA context, the control necessary to establish an agency relationship refers the right to control the third-party caller. *See, e.g.*, *id*, at *4 (affirming dismissal of TCPA vicarious-liability claim because the defendant did not "control" the third-party caller who called the plaintiff's phone); *Childress*, 2018 WL 4684209, at *4 (dismissing TCPA vicarious-liability claim against an insurance company whose products were advertised during a phone call because the plaintiff failed to show that the insurance company "had the right to control the initiation of the telephone call to [the] [p]laintiff") (citing *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-532, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (dismissing TCPA vicarious-liability claim where the plaintiff did not allege that defendant "controlled, authorized, or even knew about [the third party's] phone calls or that [defendant] had any control over" the third-party caller and had "virtually no allegations regarding the relationship between [the defendant] and [the third party]")).

With this background in mind, the Court concludes that Plaintiff's allegations are sufficient to establish that Mutual of Omaha was responsible for the unwanted calls. Taking Plaintiff's allegations as true, as the Court must, *see Sylvia*, 875 F.3d at 1313, the complaint establishes that Defendants, including Mutual of Omaha, "control, direct, supervise and implement telemarketing." Doc. 1-2 ¶ 25. More specifically, Mutual of Omaha and the other Defendants, "authorized the phone calls"; "directly or indirectly controlled the persons who actually made or initiated the calls"; "approved, wrote, reviewed or participated in developing the marketing sales

scripts messages," and "use[d] fake names" in initial telephone solicitations, *id.* ¶¶ 44, 69, which is sufficient to state a claim. *See Mestas v. CHW Grp. Inc.*, 508 F. Supp. 3d 1011, 1023 (D.N.M. 2020) (holding that the plaintiff stated a plausible TCPA vicarious-liability claim where the defendants "'authorized' the telemarketing calls, 'directly or indirectly controlled' [the third-party callers] … and approved, wrote, or reviewed the script used by the telemarketers during those calls").

Plaintiff's allegations also establish that Mutual of Omaha was aware of the calling campaign, *see* Doc. 1-2 ¶ 29, which sets this case apart from TCPA cases where the defendants had no knowledge of the robocalls. *See Panacci*, 2015 WL 3750112, at *7 (finding no vicarious liability where there were no allegations that the defendant "knew about [the third party's] phone-calls"). In addition, Plaintiff alleges facts connecting the Jane Does, Shader and AIG, and Hanley to Mutual of Omaha and his allegations draw the reasonable inference that the Defendants were aware of each other's roles in the calling campaign. *See id.* (dismissing vicarious-liability claim where there were "virtually no allegations regarding the relationship between [the defendant] and [the third party]"). The Court concludes that Plaintiff has plausibly alleged sufficient control to establish an agency relationship.

In making its control arguments, Mutual of Omaha states that it is vicariously liable only if it controlled the "manner and means" of the telemarketing campaign, relying on *Jones v. Royal Administration Services., Inc.* 887 F.3d 443 (9th Cir. 2018). In *Jones* the Ninth Circuit held that in TPCA cases a principal with sufficient authority to control the manner and means of an agent's telemarketing may be held vicariously liable. 887 F.3d at 449–50. In so holding, the court adopted the Restatement's manner and means test normally used to determine whether an employer-employee relationship exists. *Id.* at 450 (quoting Restatement (Third) of Agency § 7.07(3)). As the

court explained, the manner and means test could be useful for determining whether a principal who has hired third-party telemarketers could be vicariously liable as if it were the employer of the telemarketers. *Id.* at 449–50, 449 n.3. Therefore, courts in the Ninth Circuit apply the manner and means test. *See Sheski v. Shopify (USA) Inc.*, No. 19-CV-06858-HSG, 2020 WL 2474421, at *4 (N.D. Cal. May 13, 2020) ("In order to allege a traditional agency relationship, [p]laintiff would have to allege [d]efendant controlled or had the right to control [the entity responsible for the text messages] *and, more specifically, the manner and means* of the text message campaign they conducted.") (emphases added).

It does not appear that the Tenth Circuit has addressed whether the "manner and means" control theory test applies in the TCPA context. However, the Tenth Circuit—albeit not in a TCPA case—reversed a district court for applying that theory because, as the court explained, it is reserved for examining whether an employer-employee relationship exists. *See Alfaro-Huitron*, 982 F.3d at 1256–58. As the court explained, "there is no requirement that the principal have the right to control the manner and means of the agent's performance of work" unless the agent is alleged to be an employee. *Id.* at 1256; *see also Quigley v. Rosenthal*, 327 F.3d 1044, 1064 (10th Cir. 2003) (stating that a principal's control of "the manner of work performed" by the agent is "a requirement necessary only if an agent is alleged to be an employee ….") Instead, a "minimal level of control" by a principal can establish an agency relationship. *Alfaro-Huitron*, 982 F.3d at 1254. So, in summary, "where an agent does not need to be an employee to create liability for the principal … a minimal level of control may suffice." *Id.* at 1255–56.

Applying the correct standard, the Court concludes that Plaintiff's allegations establish the minimal level of control required to establish an agency relationship. As noted above, Plaintiff alleges that Mutual of Omaha controlled, directed, supervised, and implemented the robocall

campaigns at issue. Plaintiff further alleges that Mutual of Omaha directly or indirectly controlled the Jane Doe callers and approved the script they used when they called Plaintiff. Plaintiff further alleges that Mutual of Omaha and was aware of the calling campaign, aware of the other Defendants, and that all Defendants had a shared purpose to call persons even though their phone numbers were listed on the Do-Not-Call Registry. As stated above, these allegations are sufficient to establish that Mutual of Omaha is vicariously liable for the unwanted calls, thereby satisfying the first element of Plaintiff's TCPA claim. Given this ruling, the Court need not address Plaintiff's arguments regarding apparent authority or ratification.

### 2. Plaintiff Plausibly Alleges that Mutual of Omaha Called His Phone Using a Prerecorded Voice

The next element Plaintiff must plausibly allege is that Mutual of Omaha "us[ed] an automatic telephone dialing system" or "an artificial or prerecorded voice to any telephone number assigned to a [ ] cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). "Thus, there are two ways to violate this provision: using an 'automatic telephone dialing system' … and using an 'artificial or prerecorded voice.'" *Eggleston v. Reward Zone USA LLC*, No. 2:20-CV-01027-SVW-KS, 2022 WL 886094, at *2 (C.D. Cal. Jan. 28, 2022). Plaintiff claims that Mutual of Omaha's alleged calls did both. The Court only needs to decide whether Plaintiff has sufficiently alleged that Mutual of Omaha, through its alleged agents, using an artificial or prerecorded voice. The Court therefore does not address or decide the parties' arguments about use of an automatic telephone dialing system.

The TCPA does not define the term artificial or prerecorded voice. *Mina v. Red Robin Int'l, Inc.*, No. 20-CV-00612-RM-NYW, 2022 WL 2105897, at *7 (D. Colo. June 10, 2022). To withstand a motion to dismiss, the plaintiff must allege "sufficient facts to support an inference that the message was prerecorded." *Metzler*, 2023 WL 1779631, at *6. "Courts have denied

motions to dismiss in cases brought under the TCPA in which plaintiffs have alleged that they received prerecorded calls and that the contents of the call were identical." *Rose v. New TSI Holdings, Inc.*, No. 21-CV-5519 (JPO), 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022) (citing *Dendy v. Chartrand*, No. 18-CV-1118-WPJ, 2019 WL 719762, at *3 (D.N.M. Feb. 20, 2019) (denying motion to dismiss "because the calls contained prerecorded messages" and "contained the same message")).

Mutual of Omaha faults Plaintiff for providing "no facts regarding the 'tenor, nature, or circumstances of the alleged calls' that would allow the Court to infer that a prerecorded voice was actually played, as opposed to a live caller speaking, as is required to plead a Section 227(b) claim." Doc. 4 at 27 (citation omitted). However, Mutual of Omaha cites no authority that such hyper-technical allegations are pleading requirements in the Tenth Circuit. *See George*, 833 F.3d at 1247 ("the Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each element")

Nevertheless, Plaintiff's allegations sufficiently draw the inference that a prerecorded voice was used. He states that "on several occasion" the Jane Doe callers "left a generic, standardized prerecorded message in Plaintiff's phone's voice-mail," which is sufficient to support an inference that Plaintiff received identical, prerecorded calls. Doc. 1-2 ¶ 40. *See Dendy*, 2019 WL 719762, at *3 (denying motion to dismiss "because the calls contained prerecorded messages" and "contained the same message"). Finally, although Mutual of Omaha may have a point that Plaintiff should have provided more details about the content of the message, this Court has highlighted the "difficulty of alleging details about a [ ] [prerecorded voice] before discovery" in a TCPA case. *Id.* In summary, Plaintiff has sufficiently alleged that he received prerecorded calls at this stage, thereby satisfying the second element of his Section 227(b) claim.

### 3. Plaintiff Plausibly Alleges that He Did Not Consent to Receiving the Calls

The third and final element of Plaintiff's 47 U.S.C. § 227(b) claim is that Mutual of Omaha, through its agents, called Plaintiff without his "prior express consent." *Meyer*, 707 F.3d at 1043. This element is does not appear to be in serious dispute. Plaintiff alleges that he "never gave prior express written consent to receive telephone solicitations from Defendants or their agents," Doc. 1-2 ¶ 59, which is sufficient to deny the dismissal motion. *See Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1182 (D. Utah 2021) (denying motion to dismiss TCPA claim where the plaintiff's complaint "clearly state[d] that she did not consent to receiving text messages"). Further, Mutual of Omaha focused its arguments on the other elements of Plaintiff's case, indicating that Mutual of Omaha does not significantly contest this element at this stage.

In summary, because Plaintiff has plausibly alleged a violation of 47 U.S.C. § 227(b), Mutual of Omaha's motion to dismiss Plaintiff's Section 227(b) claim (Count II) is denied. The Court next examines Count III—whether Plaintiff has plausibly stated a cause of action under a different section of the TCPA for violating the Do-Not-Call Registry.

### B.    Mutual of Omaha's Motion to Dismiss Plaintiff's Claim under 47 U.S.C. § 227(c) (Count III) is Denied

In Count III, Plaintiff alleges that that Mutual of Omaha violated 47 U.S.C. § 227(c)(5) by calling him in violation of the national Do-Not-Call Registry. Section 227(c) of the TCPA "authorizes a private right of action for '[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection.'" *Barrett v. Vivint, Inc.*, No. 219-CV-00568-DBB-CMR, 2020 WL 2558231, at *6 (D. Utah May 20, 2020) (quoting 47 U.S.C. § 227(c)(5)). "Instead of directly proscribing certain telemarketing behaviors, it empowers the Federal Communications Commission (FCC) to make regulations to further 'protect residential telephone subscribers'

privacy rights to avoid receiving telephone solicitations to which they object.'" *Robison*, 569 F. Supp. 3d at 1182 (quoting 47 U.S.C. § 227(c)(1)). "The TCPA creates another private right of action to enjoin violations of the FCC regulations promulgated under Section 227(c), and like in Section 227(b), plaintiffs can seek up to $1,500 per violation. § 227(c)(5)." *Id.*

The regulations that Plaintiff cites are 47 C.F.R. § 64.1200(c) and 47 C.F.R. § 64.1200(d), necessitating the Court's analysis of those separate provisions.

### 1. Plaintiff Plausibly Alleges a Violation of 47 C.F.R. § 64.1200(c)

Starting with Section 64.1200(c), that regulation provides that "[n]o person or entity shall initiate any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry…." 47 C.F.R. § 64.1200(c)(2). Mutual of Omaha raises two arguments for dismissal. First, it renews its argument that it was not the actual caller or vicariously responsible for the calls. However, the Court's analysis above disposes of this argument because Plaintiff has pleaded sufficient facts at this stage that Mutual of Omaha is vicariously liable. *See supra* A.1.a.

Second, Mutual of Omaha argues that Plaintiff has failed to allege that his cellphone was used for "residential" purposes and that courts dismiss TCPA claims when a plaintiff fails to allege that a cell phone was used for residential purposes. *See, e.g., Cunningham v. Rapid Cap. Funding, LLC/RCF*, No. 3:16-CV-02629, 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017), *report and recommendation adopted sub nom. Cunningham v. Rapid Cap. Funding*, *LLC*, No. 3:16-CV-02629, 2017 WL 3776165 (M.D. Tenn. Aug. 31, 2017) (dismissing the plaintiff's claim under 47 C.F.R. § 64.1200 because he "ha[d] not alleged facts showing his cell phones are used for residential purposes"); *Lee v. Loandepot.com, LLC*, No. 14-CV-01084-EFM, 2016 WL 4382786,

at *6 (D. Kan. Aug. 17, 2016) (granting summary judgment against the plaintiff for failing to introduce evidence that his cell phone number was used for residential purposes).

More specifically, Mutual of Omaha argues that Plaintiff must show *how* he used his cell phone. Mutual of Omaha believes Plaintiff must show that his cell phone was "the primary means of reaching" him, i.e., that "there is no other landline or phone at the residence." Doc. 4 at 29 (citation omitted). The problem with Mutual of Omaha's argument is that it has not pointed to any binding authority that these are pleading requirements in the Tenth Circuit. To the contrary, in *Mestas*, this Court allowed a similar claim to go forward based on similar allegations. For example, the plaintiff alleged that he used his phone number "for his personal or residential purposes" and the defendants "made telephone solicitations to [p]laintiff more than once within 12 months despite the fact [that] his phone number … has been continuously listed on the Registry at all relevant times" even though the complaint made no detailed references to how the plaintiff used his phone or if it was the primary means of reaching him. 508 F. Supp. 3d at 1027.

Here, Plaintiff's allegations are strikingly similar to those in *Mestas*. He alleges that he "has a wireless or cell phone" and that he uses this cell phone "for his personal, household and residential needs." Doc. 1-2 ¶ 32. He further alleges that "[w]ithin the past twelve (12) months Jane Does on behalf of Defendants have repeatedly called Plaintiff's cell phone" even though Plaintiff's cell phone number "has at all relevant times been continuously listed on the National Do-Not-Call Registry." *Id* ¶¶ 33, 64. Consistent with *Mestas*, Plaintiff has plausibly alleged that his telephone number was used for residential purposes even if his complaint does not contain detailed allegations about how he used his cell phone and whether it was the only way to reach him.

In summary, Plaintiff has stated a plausible claim for relief that Defendants allegedly violated 47 C.F.R. § 64.1200(c)(2). The Court next turns to Plaintiff's claim under 47 C.F.R. § 64.1200(d), which involves an analysis of whether that regulation provides a private right of action.

### 2.   Plaintiff Plausibly Alleges a Violation of 47 C.F.R. § 64.1200(d)

The next regulation at issue is 47 C.F.R. § 64.1200(d). Generally speaking, Section 64.1200(d) "relates to a marketer's duty to prepare internal policies to receive and implement affirmative requests not to receive calls." *Robison*, 569 F. Supp. 3d at 1182–83 (citation omitted). The subsection provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). These procedures include, but are not limited to, the following: (1) having a written policy relating to maintaining a do-not-call list; (2) training personnel engaged in telemarketing on the existence and use of the do-not-call list; (3) recording and disclosing do-not-call requests; and (4) maintaining do-not-call lists. *Id.* § 64.1200(d)(1)–(4).

Before addressing the merits of Plaintiff's § 64.1200(d) claim, the Court must first briefly address Mutual of Omaha's argument that § 64.1200(d)(4) does not create a private right of action because it was enacted pursuant to 47 U.S.C. § 227(d), "technical and procedural standards", which do not contain a private right of action. Plaintiff counters that the implementing regulation was promulgated under 47 U.S.C. § 227(c), "protection of subscriber privacy rights", which does contain a private right of action.

Mutual of Omaha is not the first litigant to make this argument. Although the Tenth Circuit's position is unknown, "[t]here is a wide but fairly even split of authority among other

courts on the issue" of whether Section 64.1200(d)(4) was promulgated under 47 U.S.C. § 227(c) or § 227(d). *Robison*, 569 F. Supp. 3d at 1183 (collecting cases). However, another court has stated that the "majority of courts that have addressed the issue … have held that 47 C.F.R. § 64.1200(d)(4) was promulgated under the authority in § 227(c) and, therefore, contains a private right of action." *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020) (citing *Charvat v. NMP, Ltd. Liab. Co.*, 656 F.3d 440, 449 (6th Cir. 2011) (holding that the do-not-call provision, § 227(c), was implemented by § 64.1200(d)(4)); *see also Dobronksi v. Selectquote Ins. Servs.*, No. 2:19-cv-12798, 462 F.Supp.3d 784, 790–91 (E.D. Mich. May 27, 2020) (holding that a private right of action exists for a violation of § 64.1200(d)); *Barrett*, 2020 WL 2558231, at *7 (holding that "[t]he internal do-not-call registry requirement was promulgated under 47 U.S.C. § 227(c) and incorporates a private right of action."); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1200 (M.D. Tenn. 2017) (holding that "the internal do-not-call procedures of 47 C.F.R. § 64.1200(d) fit cleanly under the rubric of 47 U.S.C. § 227(c)'s general mandate to adopt adequate do-not-call regulations.").

In *Robison*, the United States District Court for the District of Utah explained that "[t]he respective legislative and regulatory histories bear this out" because:

> First, Congress directed the FCC to, in its Section 227(c) rulemaking proceeding, compare and evaluate alternative methods and procedures (including ... industry-based or company-specific 'do not call' systems ...) for their effectiveness in protecting such privacy rights…. The FCC's company-specific Do-Not-Call rules were put in Section 64.1200(e)—now Section 64.1200(d). Second, it is an affirmative defense against a Section 227(c) lawsuit that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection…. These procedures are outlined in what is now Section 64.1200(d). Third, the purpose of Section 227(c)—protecting individual privacy rights—more closely corresponds to Section 64.1200(d).

569 F. Supp. 3d at 1183–84.

The Court agrees with the majority of courts, including sister courts in the Tenth Circuit such as *Robison* and *Barrett*. The Court agrees that the "substance of the regulation more directly corresponds to the substance of Section 227(c) rather than Section 227(d)." *Persichetti v. T-Mobile USA, Inc.*, No. 1:19-CV-02424-JPB, 2020 WL 4811003, at *4 (N.D. Ga. Aug. 17, 2020). Section 64.1200(d), "like § 227(c), is concerned principally with the protection of individual privacy rights." *Rosenberg*, 435 F. Supp. 3d at 324. To that end, the "do-not-call provisions, including § 64.1200(d)(4), further that goal and comport with the statute." *Id.*; *Persichetti*, 2020 WL 4811003, at *4. In conclusion, Section 64.1200(d) violations are actionable through Section 227(c)'s private right of action and Mutual of Omaha's motion to dismiss the complaint on this ground is denied.

With that issue resolved, the Court next addresses whether Plaintiff has plausibly alleged violations of Section 64.1200(d). Although Plaintiff could have been clearer about which subparts he claims Mutual of Omaha violated, the requisite allegations are understandable. He alleges that when he answered the offending calls, the live telemarketer "never identified the seller or sponsor of the call" and that the "Jane Does used only fake names" Doc. 1-2 at ¶ 42. He further alleges that if he "expressed complaints about the calls or demanded to know who Defendants were", the telemarketers would hang-up on him. *Id.* ¶ 27. Finally, he claims that Defendants never adopted certain "policies and practices" to remain compliant with the law. *Id.* ¶ 46. All of these allegations are ostensible violations of Section 64.1200(d)(1)–(4), which require telemarketers to have written policies relating to maintaining a do-not-call list; to train telemarketing personnel on the existence and use of the do-not-call list; to record and disclose do-not-call requests; and to maintain do-not-call lists. *See* 47 C.F.R. § 64.1200(d)(1)–(4). Therefore, Plaintiff has plausibly alleged that Mutual of Omaha has violated Section 64.1200(d), and this claim can go forward.

To recap, the Court has so far held that Plaintiff has stated plausible claims for relief under the federal TCPA and the Court has denied the entirety of Mutual of Omaha's motion to dismiss Plaintiff's federal claims (Counts II and III). Having addressed Plaintiff's federal claims, the Court now addresses Mutual's of Omaha's request to dismiss Plaintiff's state-law claim under the New Mexico Unfair Practices Act (Count I).

**C.      Mutual of Omaha's Motion to Dismiss Plaintiff's New Mexico Unfair Practices Claim (Count I) is Granted in Part and Denied in Part**

Plaintiff asserts analogous claims under the New Mexico UPA. Plaintiff alleges violations of Sections 57-12-22(B)(1) and (C)(1) of the UPA. Those sections state in relevant part that "[i]t is unlawful under the Unfair Practices Act for a person to make a telephone solicitation for a purchase of goods or services … without disclosing within fifteen seconds of the time the person being called answers the name of the sponsor and the primary purpose of the contact." N.M.S.A. 1978, § 57-12-22(B)(1). Furthermore, "[i]t is unlawful for a person to … make a telephone solicitation of a residential subscriber whose telephone number has been on the national do-not-call registry, established by the federal trade commission, for at least three months prior to the date the call is made[.]" *Id.* § 57-12-22(C)(1). A plaintiff can seek an injunction to enjoin a defendant from committing an unfair trade practice. *Id.* § 57-12-10(A).

There is little, if any, guidance from New Mexico state courts on the UPA provisions that Plaintiff cites. *See Mestas*, 508 F. Supp. 3d at 1030 (stating that "New Mexico courts have not yet addressed the reach of Section 57-12-22(B)(1) or (C)(1)"); *Mohon v. Nat'l Cong. of Emps. Inc.*, No. 1:19-CV-652 KWR/JHR, 2020 WL 1332376, at *5 (D.N.M. Mar. 23, 2020) ("There is no apposite New Mexico jurisprudence interpreting [Section 57-12-22(B)(1) or (C)(1)]."). Nevertheless, this Court "analyze[s] claims brought under the NMUPA … together with TCPA claims." *Escano*, *v. Concord Auto Protect, Inc.*, No. CV 21-223 MV/CG, 2022 WL 1239968, at

*3 (D.N.M. Apr. 27, 2022), *aff'd in part, rev'd in part on other grounds by Escano*, 2023 WL 4247703.

Mutual of Omaha makes three arguments for dismissing Plaintiff's UPA claims. First, with respect to Plaintiff's Section 57-12-22(B)(1) claim, Mutual of Omaha argues that this provision applies only to the party "who actually initiates the call and speaks to the called party directly." Doc. 4 at 31. Because the Jane Doe callers initiated the calls and spoke to Plaintiff, Mutual of Omaha argues that it is not liable. However, the Court has previously explained that Plaintiff's allegations are sufficient to establish that Mutual of Omaha is vicariously liable for the unwanted calls. *See supra* A.1.a. This means that Mutual of Omaha "made" the call under the TCPA and the UPA because the allegations establish that Mutual of Omaha had an agency relationship with the Jane Doe callers. *See Mestas*, 508 F. Supp. 3d at 1029 (applying vicarious liability principles to the plaintiff's TCPA and UPA claims).

Second, with respect to Plaintiff's allegations under Section 57-12-22(C)(1), Mutual of Omaha points out that Plaintiff did not identify the exact date that his telephone number was registered on the national DNC Registry. According to Mutual of Omaha, without knowing an exact registration date it is impossible to infer that his number was listed "for at least three months prior to the date the call is made[.]" NMSA 1978 § 57-12-22(C)(1). However, Plaintiff's allegations are sufficient to draw the inference that his phone number was listed for at least three months before the date of the call. He alleges that his number has "at all relevant times been continuously listed" on the Registry and that "within the past twelve (12) months" of filing this lawsuit the "Jane Does on behalf of Defendants have repeatedly called Plaintiff's cell phone…." Doc. 1-2 ¶¶ 34, 64. These allegations state, at the very least, that Plaintiff had his phone continuously and at all relevant times registered on the DNC Registry and that Defendants called

his phone repeatedly within a twelve-month period. Further details about the exact date of registration can be obtained during discovery. *See Dendy*, 2019 WL 719762, at *3 (denying motion to dismiss TCPA and UPA claims where the plaintiff had yet to discover pertinent information).

Third and finally, Mutual of Omaha argues that Plaintiff's request for an injunction is based on speculative and contradictory allegations. When prospective relief is sought, a plaintiff must of course show that he is "likely to suffer future injury" from the defendant's conduct. *City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983). According to Mutual of Omaha, Plaintiff's single allegation that he is "likely to be damaged by Defendants' telemarketing in the future" is speculative and contradicted by other allegations that the Jane Doe callers have "stopped" the unwanted calls after he purchased insurance during a February 23, 2023, call. Doc.1-2 ¶¶ 55, 75.

In his response brief, Plaintiff makes no attempt to substantively respond to this argument. Instead, he merely reiterates in one sentence that he is entitled to an injunction. *See* Doc. 5 at 20 (Plaintiff stating that "if the Court finds that Plaintiff has plausibly stated claims [under the UPA], at this stage of the proceedings no more is required and Plaintiff has properly requested injunctive relief provided for by the UPA.") However, this does not address Mutual of Omaha's specific contention that Plaintiff's allegations of future harm are undermined by other allegations that the calls eventually stopped. Because Plaintiff has not substantively responded to Mutual of Omaha's specific argument, and because Plaintiff has merely reiterated that he is entitled to injunctive relief, the Court grants Mutual of Omaha's motion to dismiss Plaintiff's request for an injunction.

## IV. CONCLUSION

Mutual of Omaha Insurance Company's Motion to Dismiss **(Doc. 4)** is GRANTED in part and DENIED in part as follows: Mutual of Omaha's motion to dismiss Plaintiff's claims under 47 U.S.C. § 227 and N.M.S.A 1978 §§ 57-12-22(B)(1), (C)(1) is DENIED. However, Mutual of Omaha's motion to dismiss Plaintiff's request for injunctive relief under N.M.S.A. 1978 § 57-12-10(A) is GRANTED.

**IT IS SO ORDERED**.

_____

HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE